Gilpin, Ch. J.,

delivered the opinion of the Court.
This is an action of traver, brought by the plaintiffs below, for the purpose of recovering the value of an unfinished sloop or vessel. The facts are briefly, but substantially, as follows:
James H. Tubbs, by trade a shipbuilder, on the thirty-first of August, 1854, entered into a contract, under seal, with John W.- Hall, the defendant below, by which he agreed to build and complete for him, in a .workmanlike manner, the hull of a sloop,—to spar her, put travellers in her, and “ deliver her in Philadelphia by the first day of March, 1855, everything complete to pass the inspection of two persons, if required by Hall.” The contract particularly specifies the dimensions of the sloop, and the -kind of materials to be used in her construction. And John W. Hall,'on his part, agreed to pay Tubbs for the sloop at the rate of twenty-eight dollars per ton; one-third to be paid when the keel, stem, stern-posts, and floors *557 should be laid; one-third when the deck-frame and deck should be laid"; and the other third when the sloop should be “ delivered in Philadelphia all complete, and according to contract.” And for the faithful performance of this contract they bound themselves to each other respectively, in the penal sum of one thousand five hundred dollars.
. The first instalment was paid, according to contract, on'' the 10th of January, 1855; the second was paid on the 16th of May following, and on the 8th of June the sum of one hundred dollars was advanced on account of the third instalment.. But on the 4th, 5th, 6th, 7th, and 9th of June, 1855, whilst the sloop was still on the stocks, in an unfinished state, and in the possession of Tubbs, sundry writs of fieri facias were issued against him by his creditors, under which she was levied on and taken in execution. She was regularly inventoried and appraised; and was afterward, on the 14th of July, 1855, put up and sold at public auction by Constable Calhoun, under and by virtue of the process then in his hands, to George Green et al., the plaintiffs below. It appears further, that in July, some 'days prior to the sale, but after the levy of the executions upon it, Hall, the defendant below, took possession of the sloop; and on the 13th of the same month procured from Tubbs an instrument of writing, commonly called a ship-carpenter’s certificate. Hall afterwards finished, and removed her beyond the jurisdiction of the courts of this . State.
Hpon these facts, the question presented for the consideration'of the Court is, whether the unfinished sloop, at the time of the levy of the writs offieri facias, belonged 'to James H. Tubbs, the builder, or to John W. Hall, the defendant below. If she belonged to Tubbs, then, upon the sale by the constable, the property in- her passed to George Green et al., the plaintiffs below. This is a question of first impression in this State, and its solution must depend on the construction to be given to the contract between the parties. It was undoubtedly competent for them to have agreed, in express terms (if such had been *558 their intention), that the property in the unfinished sloop should pass from Tubbs and vest in Hall, upon payment by him of the first instalment. But they have not done so.
When a man contracts with another for the building of a vessel or other thing, not then in being, for a given price, the general rule is, that no property in it vests in the person for whom it is to be constructed, during the progress of the work upon it, nor, indeed, until it is fully completed and delivered, or is, at least, ready for delivery. This principle or general rule is fully recognized in Mucklow v. Mangles, 1 Taunt. 318; Towers v. Osborne, 1 Strange, 506; Merrit v. Johnson, 7 Johns. 473; Andrews et al. v. Durant et al., 1 Kernan, 35; and in many other cases; and it has never, to our knowledge, been questioned; but, on the contrary, it has been uniformly considered as sound law. The principle, that where a party orders goods to be made, the materials belong to the maker while the goods are in progress of being" manufactured, is too well settled to admit of dispute.
The precise question here, however, which we are called on to decide is, whether the payment of the first, or two first instalments as the work progressed, according to the terms of the contract, is sufficient to take this ease out of the general rule, and vest the property in Hall. The counsel for the defendant claim that, as the sloop was to be built upon a special contract, the terms of which required that given portions of the price should be paid according to the progress of the work, the payment of these portions or instalments as they became due, had the effect in law, and according to the intention of the parties, of vesting the property in the sloop in their client; and they rely for support mainly upon the eases of Wood v. Russell, 7 Eng. C. L. R. 310; Clark v. Spence, 31 Eng. C. L. R. 107; Wood v. Bell, 85 Eng. C. L. R. 771; Bell’s Principles of the Law of Scotland, 486.
The case of Wood v. Russell is the first in which the doctrine of appropriation on payment of instalments has been announced in England; and as the question was not neces *559 sarily involved in the decision, it is at most hnt an extrajudicial opinion. Chief Justice Ahhott says, in express terms: “We are not called to decide how far that payment vests the property in the defendant, because, here Patón signed the certificate to enable the defendant to have the ship registered in his (the defendant’s) name, and by that act consented, as it seems to us, that the general property in the ship should be considered from that time as being in the defendant.” Again, he says : “ In order to register the ship in the defendant’s name, an oath would be requisite that the defendant was the owner, and when Patón . concurred in what he knew was to lead to that oath, must he not be taken to have consented that the ownership should really be as that oath described it to be ?” So that it is perfectly apparent, the judgment of the Court proceeded upon a ground totally distinct from the doctrine of ^appropriation. And we may therefore, without any disrespect, be permitted to consider what is said by the Chief Justice in regard to this doctrine as a mere dictum. This casé was decided in the year 1822, and was followed, after the lapse of thirteen years, by the case of Clark v. Spence, decided in the year 1835. In the meantime the doctrine had been acted on by persons engaged in shipbuilding, and had been recognized by the courts; but it had not, in any instance, so far as we know, met with the cordial approval of the English judges. Indeed, it seems evident that although recognized as authority, the principle had been viewed with suspicion and followed with doubt and hesitation.
Mr. Justice Williams, who delivered the judgment of the Court in Clark v. Spence, seems to lay some stress upon the circumstance of there being, in that case, a superintendent appointed to inspect and approve of the materials, and the work as it progressed; yet, after all, it is apparent the case was finally decided mainly, if not solely, on the authority of Wood v. Russell, and it can hardly, therefore, be considered as an authority in itself. We come now to Wood v. Bell, 5 Ellis & Blackburn, 772 [85 Eng. C. L. R. 771]; which *560 was decided in the year 1856. This case, is similar in most respects to Wood v. Russell and Clark v. Spence. There was an inspector appointed, to inspect and approve the work, and the ship was to "be paid for by instalments, during the progress of the work. But Lord Chief Justice Campbell, who delivered the opinion of the Court, does not appear to have considered either of these circumstances, taken alone, as conclusive upon the question of property; for he relies principally upon other facts, as indicating the intention of the parties, that the property in the unfinished ship, and the materials to be used in her construction, should vest in the plaintiff, "Wood. He says: “But .two facts remain. Joyce, at the instance of the plaintiff*, punches his name on the keel expressly for the purpose of securing her to the. plaintiff; and although he refuses, after this, to execute a formal assignment of her to the plaintiff, he at the same time admits her to be the plaintiff’s property. Both these cir-«, cumstances occurred when Joyce was the master of his property, and appear to us of the greatest importance; they throw a light on the preceding circumstances, and show they are to be understood in so far as they were in themselves ambiguous.” 1
The doctrine of appropriation, announced in Wood v. Russell, and 'afterwards recognized and adopted in Clark v. Spence, has never, we believe, been followed in this country. Merritt v. Johnson, 7 Johns. 473, and Andrews v. Durant, 1 Kernan, 35, are both cases of contracts for building vessels to be paid for by instalments as the work progressed, and in which there were superintendents appointed to inspect and approve the work, but they were both decided according to the general rule which we have stated. In the former case, the doctrine of appropriation is entirely ignored; and in the latter, the judges of the Court of Appeals, after an elaborate and able review of the English decisions, repudiated it altogether.
But, after all, the cases which have been, cited are principally serviceable as lights to guide our judgment to a correct conclusion in respect to the true meaning or inten *561 tian of the parties. In this case the contract is in writing under the hands and seals of the parties, and is executory in its terms. It is a contract for the building of a thing not yet in being; in which nothing is said as to when the property should vest in Hall. Can we say, then, with any ■ fair show of reason, because it contains a provision for payment of the price by instalments according to the progress of the Work, that it was the intention of the parties the property in the unfinished sloop should vest in Hall upon payment of the first instalment? We cannot think this would be a fair or reasonable construction of the contract ; especially, as .he was not bound to accept the sloop until she had been completed, and had passed inspection in Philadelphia upon her delivery there, according to the terms of the contract. We therefore consider that the judgment below should be affirmed.